[No. 1384.]

## JOSEPH GILLESPIE *v.* THE STATE.

ASSAULT WITH INTENT TO MURDER—CHARGE OF THE COURT.—The specific intent to kill the assaulted party is an indispensable element of the offense of assault with intent to murder, and a charge of the court which authorizes a conviction of such offense upon proof that the assault was committed with intent to inflict serious bodily harm, and not to kill, is error.    See the opinion *in extenso* for such charge.

APPEAL from the District Court of Walker.    Tried below before the Hon. J. R. Kennard.

The indictment charged the appellant with an assault with intent to murder Richard Hammonds.    He was convicted, and a term of two years in the penitentiary was assessed against him as punishment.

In substance, the testimony of Hammonds was that on the day of the assault he met the defendant in the town of Huntsville, and had a conversation with him about a small amount of money due the defendant by the father of the witness.    They talked about the matter for some time without any apparent anger being provoked, when the defendant said, "We can fix that."    The two lived on the same road, the defendant between the witness's house and the town, and they left town together that day about twelve o'clock.    They had traveled about four

and a half miles, when the defendant turned off, saying that he was going home to plant turnips. The witness next saw him a few minutes later pulling trigger on him from ambush, some thirty feet distant. The defendant was horseback, the witness in a wagon. The witness jumped out of his wagon as he received the shot, one in the breast, one in the side, and three in the elbow. He ran for some distance and fell. While he lay there some one came up and shortly left. The witness did not see who this party was. After he left, the witness got up and went on towards home. At or near the defendant's house, he secured the assistance of the defendant's son and others at the house, and by such means got home. The witness was confined for about nine months by his wounds. The weapon used by the defendant was a double-barreled shot gun.

J. F. Sims, deputy sheriff, testified that he, in company with sheriff Elkins and Captain Dickie, arrested the defendant on the night after the shooting. He denied having done the shooting. They were afraid that Hammonds was going to die, and took the defendant to Hammonds's house that night for identification. Hammonds identified him as the man who did the shooting. This, the witness believed, was in October or November, 1875. Shortly afterwards the defendant escaped from jail.

Josephine Gibson testified, for the defense, that she was a daughter of the defendant. She remembered the shooting of Mr. Hammonds. It occurred on September 6, 1875. The defendant went to town that day, but was at home at twelve o'clock, and took dinner at that time. She heard the twelve o'clock whistle of the penitentiary as he came in, and she was then taking up dinner. He worked about the yard on house logs that evening, until arrested about eight o'clock. Stanley Green and two sisters of the witness were on the place that afternoon. Green has not been about the country for several years.

Mary J. Gillespie, a daughter of the defendant, located her father at home at twelve o'clock on the day of the shooting. She declared that he took no gun with him to town that day, and brought none home. He owned no gun. The defendant lived about five miles from town. Julia A. Gillespie, another daughter, corroborated her sister, declaring positively that the defendant was at home at twelve o'clock. She stated, however, that though the defendant took no gun off with him, and

brought none back, he owned one, which was in the house all day.

The motion for new trial assailed the evidence, and the charge of the court, and denounced the verdict as unsupported by the testimony.

No brief for the appellant has reached the Reporters.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, J.   Appellant was convicted of an assault with intent to murder one Richard Hammonds.

The learned judge before whom this case was tried, after having defined an assault, assault and battery, murder of the first and second degrees, and manslaughter, applied the law affirmatively to the case as presented by the evidence, as follows:

"If you shall believe from all the evidence before you, beyond a reasonable doubt, that at any time within three years next before the finding of the indictment in this case, which was on the twenty-sixth day of November, 1875, within the county of Walker, State of Texas, the defendant Jo. Gillespie did wilfully, with his malice aforethought, either express or implied, as herein before explained to you, shoot at and wound the said Richard Hammonds, with a double-barreled shot gun, the same being a deadly weapon, within carrying range of the same, with intent to kill or inflict serious bodily injury on the said Richard Hammonds, and that had the said Richard Hammonds thereby been killed the offense would have been murder, then you will find the said Jo. Gillespie guilty of an assault with intent to commit murder."   Article 500, Penal Code, provides that, "If any person shall assault another with intent to murder he shall be punished," etc.   The question here presented is, can a party be guilty of this offense without he intends to take the life of the other person?   If the intention is to inflict serious bodily injury, and not to take life, is he guilty of an assault with intent to murder?   This question has been passed upon by this court in two cases, *White* v. *The State, ante*, p. 259, decided at the last Tyler term of this court, and *Harrell* v. *The State, ante*, 374, decided at this term of the court; and in these cases the court held that the specific intent to kill must prompt the assault. "In criminal law, when a special intent beyond the natural consequences of the thing done is essential to the crime charged,

2 A

such special intent must be pleaded, proved and found." (*State v. Bloedow*, 45 Wis., 279; S. C. 2 Amer. Crim. Rep., Hawley, 631 and note.)

We have no doubt but that the objectionable portion of the above charge was inspired by Article 502, Penal Code, which is as follows: "Whenever it appears upon a trial for assault with intent to murder that the offense would have been murder had death resulted therefrom, the person committing such assault is deemed to have done the same with that intent." From this article it is inferred that in all cases where if death had resulted from the assault the homicide would have been murder, death not ensuing the assault would be with intent to murder. This conclusion we do not believe to be correct. A simple illustration will suffice to expose its fallacy: Suppose A assaults a party with intent to rob or rape; death ensuing, murder of the first degree would be the offense. But who will insist, death not resulting, that the party would be guilty of an assault with intent to murder? We will not discuss this subject further. See our construction of Article 502, in *White* v. *The State*, last Tyler term, *ante*, p. 259.

For the error in the charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered February 3, 1883.